**Samuel Owen SCHWARTZ v. E. Willa HAAS f/k/a Ethel Seldin-Schwartz**

[739 A.2d 1188]

No. 98-176

July 19, 1999. This proceeding is before us for a second time. In *Schwartz v. Seldin-Schwartz*, 165 Vt. 499, 685 A.2d 665 (1996), we held that the family court was without authority in a divorce case to award a money judgment to husband even in the face of findings that wife wrongfully diverted assets from the marital estate she shared with her seriously disabled spouse. See *id.* at 503-04, 685 A.2d at 667-68. On remand, the family court took up our mandate to reconsider both its maintenance and property settlement awards, see *id.* at 504, 685 A.2d at 668, and entered a decree that signifi-

cantly resembles its previous order — the salient difference being that husband was awarded the sum of $50,000 "payable from [wife's] share of the marital estate." When wife did not remit the $50,000 by the deadline established in the decree, the court further directed that this sum be offset from husband's monthly maintenance obligation. Wife appeals. We affirm.

As wife acknowledges, our previous opinion gave us an occasion to assess and ultimately to affirm the family court's underlying factual determinations. See *id.* at 500-01, 685 A.2d at 665-66. We therefore will not recapitulate the facts here in detail. It suffices to note that husband is seriously and permanently disabled as the result of a head injury and has resided at an assisted-care facility in Vermont since 1992; that wife had a power of attorney to manage husband's affairs, but it was revoked in early 1992 after wife demanded that he not reside in the marital home; and that, notwithstanding the revocation, wife spent down certain marital assets, took sole title to the marital home in New York and refinanced the residence, receiving $112,000 in proceeds on the house and half of a $34,000 brokerage account. The family court characterized wife's actions as "fraudulent" and her explanations as "unsatisfactory." *Id.* at 500-01, 685 A.2d at 666.

To restore to husband at least part of the misappropriated assets, the family court initially awarded husband a $50,000 judgment against wife in its divorce order. Husband's daughters sought such a lump-sum amount to enable husband to purchase an interest in a living facility more appropriate to his physical and mental condition. It was this order that we initially reversed and that the family court amended into a part of the property disposition.

In its decision after remand, entered in its final form on June 17, 1997,* the family court noted that husband was in need of

$100,000 up front to buy into the desired residential facility. The court also took note that wife, still living in the marital residence, "was in need of an income stream for living expenses." Thus, the court regarded its objective as "to divert some income to [wife] to help maintain her while transferring back to [husband a] sum which would allow him at least a start towards relocation." The court reaffirmed its previous award of maintenance to wife in the amount of $1,600 per month, but gave wife a 90-day deadline to pay husband the $50,000 (selling the house if necessary) or face a suspension of the maintenance payments until the $50,000 is paid.

Further proceedings ensued. Husband filed a motion on July 21, 1997 seeking an order enforcing the judgment and an order of contempt. Specifically, and because he noted that in excess of 140 days had passed since the court first directed wife to pay him $50,000, he asked the family court to set off his maintenance obligation against the sum owed him by wife. The court agreed it had the authority to enter such an order, and granted the requested relief in part. It reduced husband's monthly maintenance obligation by $750 per month until such time as husband thereby amassed the $50,000 plus interest, and also awarded attorney fees to husband. From this order, entered on March 23, 1998, wife filed a timely notice of appeal.

Wife first contends that offsetting husband's maintenance obligation against the $50,000 property award runs afoul of 12 V.S.A. § 2740, which authorizes the tak-

---

*The court originally entered its order on February 11, 1997, and it thereafter granted husband's motion to amend the decree based on matters that are not germane to wife's appeal.

ing and selling on execution of property to satisfy a judgment debt but specifically exempts certain property owned by the debtor. As wife points out, among the exemptions enumerated in the statute is "property traceable to or the debtor's right to receive, to the extent reasonably necessary for the support of the debtor . . . alimony, support or separate maintenance." *Id.* § 2740(19) and (19)(D).

This argument is without merit, based on the plain meaning of § 2740. Wife is not a debtor of husband; for present purposes she is a party who has been subject to the family court's equitable powers. See *Licursi v. Sweeney*, 157 Vt. 599, 602, 603 A.2d 342, 344 (1991) ("The purpose of the statute is to afford debtors protection from the loss of property specified by the Legislature as essential to living and working."); *Jakab v. Jakab*, 163 Vt. 575, 585, 664 A.2d 261, 267 (1995) (court's task in divorce proceeding is "to equitably divide and assign" marital property). Likewise, when the family court invokes its authority to divide marital property and/or to award spousal maintenance, it is not taking or selling goods in execution, the statutory power conferred by § 2740 and subject to the exceptions enumerated therein. Wife contends that § 2740 is applicable if read in pari materia with the maintenance statute, 15 V.S.A. § 752, authorizing such relief when the court deems it necessary to meet the payee spouse's "reasonable needs" or to maintain the payee's predivorce standard-of-living. We apply such a rule of construction when two statutes "deal with the same subject matter or have the same objective or purpose." *Board of Trustees of Kellogg-Hubbard Library, Inc. v. Labor Relations Bd.*, 162 Vt. 571, 574, 649 A.2d 784, 786 (1994). That is not the case here.

Next wife takes the position that the family court's offset order runs afoul of established principles of finality in the divorce context. "Vermont law is clear that the [family] court cannot modify the property disposition aspects of a divorce decree absent circumstances, such as fraud or coercion, that would warrant relief from a judgment generally." *Boisselle v. Boisselle*, 162 Vt. 240, 242, 648 A.2d 388, 389 (1994). Modification of a maintenance award requires "a showing of a real, substantial, and unanticipated change of circumstances." 15 V.S.A. § 758; see *Gil v. Gil*, 151 Vt. 598, 599, 563 A.2d 624, 625 (1989) (noting that such showing is a "jurisdictional prerequisite" with burden placed on party seeking modification). We view this situation as one in which the family court was not modifying its property division or maintenance award but, rather, was seeking to enforce the terms of the decree as originally entered in the face of intransigence by one of the parties. See *Elmore v. Elmore*, 159 Vt. 278, 281, 617 A.2d 159, 161 (1992) (considering father's recalcitrant history in paying maintenance, court had authority "to adopt a provision penalizing defendant for any future late payments"); see also *Walters v. Walters*, 232 S.E.2d 240, 241 (Ga. 1977) (setoff order is not modification of original decree). The court made clear in its memorandum decision accompanying the remand order that it would suspend maintenance payments to enforce the property order, if necessary. Although "[t]here is no area of law requiring more finality and stability than family law," *St. Hilaire v. DeBlois*, 168 Vt. 445, 448, 721 A.2d 133, 136 (1998) (citation omitted), we know of no principle of repose that permits a litigant to assert a reliance interest in her ability to thwart the terms of a divorce decree.

We agree with husband that this was an appropriate use of the equitable remedy of setoff. We have long recognized a broad remedy to reduce the multiplicity of actions. See Reporter's Notes to V.R.C.P. 13; *McLane v. Johnson*, 59 Vt. 237, 243, 9 A. 837, 839 (1886). Other courts have used

the remedy in situations comparable to the one before us. See *Walters*, 232 S.E.2d at 241; *Levine v. Levine*, 373 So. 2d 1380, 1382 (La. Ct. App. 1979) (allowing setoff between property and alimony award because "she would owe him his half anyway; this method simply allows a quicker settling-up on paper"); *Kalter v. Kalter*, 399 N.W.2d 455, 459 (Mich. Ct. App. 1986) (allowing setoff of property payment against support arrearage as a matter of equity); *Dobransky v. Dobransky*, 452 N.Y.S.2d 661, 664 (App. Div. 1982) (allowing setoff against alimony, but not child support). In looking at the relevant equities, we stress that we are dealing with a setoff against maintenance, rather than against child support where the interest of the child is paramount; we are addressing a liquidated amount for which wife's obligation to pay is undisputed, in circumstances where husband has a need for timely payment; and the offsetting payment obligations are interrelated in a divorce decree in order to meet the needs of both spouses.

Wife's remaining arguments can be quickly dispatched. She complains that the family court's key finding in its order imposing the setoff, that she had "made no effort whatsoever to comply" with the order to pay husband $50,000, lacks support in the record. Wife agrees that she made no payment, but apparently objects to the court's characterization of the situation in light of her poor health and limited resources. We discern no error. It is obvious that the court was simply noting that a party who had defrauded her husband predivorce was ignoring her chief obligation to him postdivorce, thus warranting further judicial intervention that, as wife herself argues, fell short of a contempt determination with all its implications.

Finally, wife complains that the family court improperly entered an ex parte order on October 14, 1997, suspending husband's maintenance obligation pending ultimate resolution of husband's motion for a further order enforcing the decree. Reduced to its essence, this amounts to a contention that, even assuming the court properly set off the maintenance obligation against the unsatisfied property award, the court acted too soon. The error, if any, was harmless.

*Affirmed.*