*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-329

MAY TERM, 2013

| | | |
|---|---|---|
| Matthew Aldrich | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Franklin Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Jennifer Aldrich Haselman | } | DOCKET NO. 158-5-11 Frdm |

Trial Judge: A. Gregory Rainville

In the above-entitled cause, the Clerk will enter:

Mother appeals the court's order modifying parental rights and responsibilities and awarding custody of the parties' children to father. On appeal, mother argues that there was no change of circumstances, that the evidence does not support several of the court's findings, and that the court failed to consider which parent could better provide for the children's future developmental needs. We affirm.

Mother and father divorced in 2008 in Alabama. They have twin girls born in January 2002. Following the divorce, parents had joint legal custody and mother had primary physical custody. The order required the parties to consult each other regarding the children's health and education. Father had contact every other weekend; because mother had by that time moved to Vermont with the children, and in recognition of the impracticality of father's exercising the alternate-weekend contact given the distance from Alabama to Vermont, the court granted father extensive summertime contact. Father was in the military and moved from Alabama to Germany to a tour in Afghanistan, and eventually to Vermont in late 2011.

Pursuant to father's request, Vermont assumed jurisdiction over the case in June 2011. Father filed a motion to enforce and for contempt in June 2011 based on mother's refusal to cooperate in allowing the children to travel to Germany where father was stationed. In January 2012, the court found mother in contempt for willfully violating a court order and preventing contact with father.

In December 2011—after the evidentiary hearing on father's motion for contempt, but before the trial court's decision—father filed a motion to modify parental rights. The court found that father's relocation to Vermont and mother's actions depriving father of contact and inhibiting father's involvement in the children's educational activities and medical decisions collectively constituted an unanticipated change in circumstances. As to the children's best interests, the court found that mother had failed to adequately provide for the children's educational and medical needs, and could not provide a positive or supportive environment. The court found that father was attentive to the children's educational and medical needs and was

better able to foster a positive relationship with mother. Thus, the court concluded that it was in the children's best interests for father to have sole legal and physical rights and responsibilities. Mother appeals the modification.

On appeal, mother first raises several challenges to the trial court's finding of a change of circumstances. The family court has authority to modify parental rights and responsibilities "upon a showing of real, substantial and unanticipated change of circumstances." 15 V.S.A. § 668(a). "We have recognized that there are no fixed standards to determine what constitutes a substantial change in circumstances; instead, the court should be guided by a rule of very general application that the welfare and best interests of the children are the primary concern in determining whether the order should be changed." Sundstrom v. Sundstrom, 2004 VT 106, ¶ 28, 177 Vt. 577 (mem.) (quotations omitted). The family court has discretion in deciding if the moving party has met its burden of demonstrating changed circumstances. Id.

In this case, the trial court found that there was a change of circumstances based on several factors. One was father's move to Vermont. Other factors included mother's contemptuous conduct that deprived father of contact with the children, mother's failure to inform and involve father in medical decisions, mother's interference in father's ability to involve himself in the children's educational activities, and the parties' inability to cooperate.

Mother argues that father's move closer to the children did not impair his relationship with his children, and therefore cannot be a change of circumstances. Mother contends that the relocation of a parent is a change of circumstances only if it significantly impairs the responsibilities of either parent. See Hawkes v. Spence, 2005 VT 57, ¶ 13, 178 Vt. 161. We need not address mother's claim that relocation by a non-custodial parent closer to the custodial parent and children cannot as a matter of law amount to a change of circumstances. In this case, the trial court did not rely exclusively or even primarily on this consideration. Rather, the trial made extensive findings supporting its conclusion that mother was unduly interfering with father's parental rights, and found a change of circumstances on that basis.

A change of circumstances may occur based on "willful, repeated interference with visitation rights," Wells v. Wells, 150 Vt. 1, 4 (1988), or from a breakdown in the parties' communication, Maurer v. Maurer, 2005 VT 26, ¶ 8, 178 Vt. 489 (mem.). The court found both in this case. As the trial court explained, under the final divorce order the parties had joint legal custody and demonstrated a level of cooperation.[1] Their relationship deteriorated, however, and at the time of the final order the court found the parties were unable to cooperate. In addition, the court found that mother had substantially interfered with father's relationship with the children by depriving him of contact with the children. These findings adequately support the

---

[1] Mother argues that the court lacked evidence to support its finding that the parties had a level of cooperation at the time of the divorce that deteriorated over time. She argues that because the parties did not get along at the time of the divorce, their inability to cooperate was not a change of circumstances. Evidence at trial supported the court's finding. On cross-examination, father agreed that there was a period of time after the divorce when the parties were able to get along reasonably well. In addition, mother's sister testified that the parties were amicable after the divorce. She felt that the relationship became more strained beginning in mid-2010. Mother also testified that the parties were able to communicate after the divorce and worked together collaboratively. Mother stated that the parties' communication started deteriorating in the summer of 2010.

court's determination that there was a change of circumstances without regard to the impact of father's relocation on that threshold question.

Mother also argues that the court erred in finding changed circumstances based in part on its findings from the January 2012 contempt order, relied-upon by the court without notice to mother. Mother argues that the court did not provide her with notice of the court's intent to incorporate these findings and this violated Rule of Evidence 201(e). Under Rule 201, the court may take judicial notice of facts "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." V.R.E. 201(b). When the court takes notice of such fact, "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice." V.R.E. 201(e).

Although the court stated that it was taking "judicial notice of its prior decision issued January 30, 2012," the court's incorporation of the January 2012 findings was not a matter of judicial notice, but merely a recognition of the existing law of the case. The contempt order was final and not appealed by mother, and therefore it became the law of the case and the issues decided were not open to challenge by mother. See Coty v. Ramsey Assocs., Inc., 154 Vt. 168, 171 (1990) (defining law-of-the-case doctrine as preventing reexamination of issues previously decided in same case by same court or higher appellate court). Because mother could not challenge the findings in the contempt order she was not prejudiced by a lack of notice.

Mother's remaining arguments relate to the court's analysis of the children's best interests. If there is a change of circumstances, the court must then consider the best interests of the children in deciding whether to modify parental rights and responsibilities. 15 V.S.A. § 668. The court is guided by the statutory factors, including the children's relationship to the parents, each parent's ability to meet the child's medical and educational needs, the children's developmental needs, and each parent's ability to foster a positive relationship with the other parent. 15 V.S.A. § 665(b). The moving party "bears the burden of showing that a transfer of custody is in a child's best interest," and the trial court has "broad discretion" in assessing the best interests. Sundstrom, 2004 VT 106, ¶ 37.

Mother first contends that the court abused its discretion in concluding that mother had failed to adequately provide for the children's medical needs. Mother argues that the court's analysis was flawed because the court improperly penalized her for how she chose to treat her daughter's medical problem, and claims that it is not the court's position to choose one medical treatment plan over another. There was no error. The court did not make a judgment about the proper medical treatment, but made findings focusing on how mother's decisions affected her children, specifically their health. These findings were supported by the record and not erroneous. See Miller-Jenkins v. Miller-Jenkins, 2010 VT 98, ¶ 12, 189 Vt. 518 (mem.) (findings will stand if supported by credible evidence). Among other things, the court found that in relation to one of the children's elimination problems, mother was unwilling to follow the recommendations of medical professionals, and failed to involve father in the decisions. Mother's lack of cooperation and her failure to notify the office that father had legal responsibility to share in medical decisions resulted in the doctor declining further treatment. The doctor's letter described that mother had been unwilling to comply with the medical recommendations or to administer medication as described. At the hearing, a health care provider testified that mother did not comply with the recommendations for treating her child. In addition, father testified that he was active in scheduling and attending medical appointments for

3

the children and working with providers to avoid unnecessary treatments. This evidence supports the court's findings that mother "refused to comply with sound medical advice," and that father "demonstrated a more reasonable and sound medical approach and commitment to the medical needs of the children." Therefore, there was no error.

Mother also contends that the court erred in faulting mother's bad behavior but ignoring father's. Mother claims that father has failed to demonstrate that he will facilitate visitation with mother in a better manner than mother has done with father. Essentially, mother asks us to reweigh the evidence. This was a matter for the family court. It was up to the court to judge the credibility of the parties and to assess the weight of the evidence. Mullin v. Phelps, 162 Vt. 250, 261 (1994) (stating that "our role in reviewing findings of fact is not to reweigh evidence or to make findings of credibility"). Father testified that he believed mother should be granted liberal visitation, that he thought it was important for the girls to have a strong bond with their mother, and that he would keep mother informed about the children. Therefore, the evidence supported the court's finding that father would foster a meaningful relationship between the children and mother.

Mother also challenges several findings as unsupported by the evidence. Mother claims that the court took isolated incidents of mother's actions and exaggerated that behavior into patterns. Having reviewed the record, we conclude that there was sufficient evidence to support the court's relevant findings. Mother claims that the court erroneously stated that mother had appeared at school "on multiple occasions" when she knew father would be there.[2] Father testified that he went to the children's school to have lunch with them. He testified that he did not mention the day in advance because otherwise mother would "sabotage" it. The evidence indicated that there was a particular day when the parties agreed father would have lunch with the children and that mother arrived at school on that day, preventing father from having lunch with the girls. While the trial court described "multiple occasions" that mother showed up at school when she knew father would be present, this extrapolation was not material to the court's decision. The court's main finding was that mother willfully prevented father from engaging in meaningful parent-child contact and "prevented him from effective involvement in the children's educational activities and medical decisions." Abundant evidence, including the court's January contempt order, demonstrates that mother interfered with father's contact with the children.

In addition, mother asserts that the court failed to properly consider which parent could better provide for the children's future developmental needs. 15 V.S.A. § 665(b)(3). While the court did not specifically make findings on each of the statutory factors, the court is not required to do so. See Mansfield v. Mansfield, 167 Vt. 606, 607 (1998) (mem.) (noting that court is required to consider each factor but statute "imposes no specific requirement on how consideration is to be manifested in the court's findings and conclusions"); Harris v. Harris, 149

---

[2] Mother also claims that the court's finding that school officials have "noted uniformly" that the girls are receptive to their father's presence at school was not supported by the evidence. The testimony supports this finding. While the principal noted that one daughter would be upset if father did not come, the testimony of the principal and the girls' teacher indicated that the girls were excited to see their father. As countervailing evidence, mother points to minutes from a meeting between school officials and the parents wherein the girls' classroom teacher recommends visitation after school rather than at lunch time. This evidence does not undermine the court's finding that the girls were receptive to their father's presence at school, but merely indicates that other times might have been less disruptive to the children's schedule.

4

Vt. 410, 414 (1988) (explaining that trial court not required to make findings on each factor as long as findings as whole demonstrate that court has considered statutory factors). The court considered the best interests of the children as required in 15 V.S.A. § 665(b). The decision reflects that the court considered all relevant factors. The court found, among other things, that mother had deprived the children of contact with their father, had not followed medical advice, had put her emotional needs ahead of the children's, and had not created a positive or supportive environment for the children. The court made a thorough and reasoned evaluation of all the relevant factors and there are no grounds to disturb its judgment.

As a final matter, father objects to certain evidence submitted by mother on appeal. Father claims that mother has submitted documents on appeal that were not offered or admitted at the evidentiary hearing. This Court's "review is confined to the record and evidence adduced at trial." Hoover v. Hoover, 171 Vt. 256, 258 (2000); see V.R.A.P. 10(a) (confining record on appeal to items filed in trial court and any transcript of proceedings below). Mother requested that this Court supplement the record on appeal with the documents, noting that they were attached to one of her pleadings. This Court ruled that documents attached to pleadings are part of the record on appeal. Therefore, the motion to strike the documents is denied. Nonetheless, because the documents were not admitted at the evidentiary hearing the substance of the documents has not been considered in addressing mother's claims regarding the sufficiency of the evidence. In any event, we conclude that consideration of the proffered documents would not in any way affect our analysis.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice